UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THEON OWENS, | No. 2:16-cv-00273 TLN CKD P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| ELENA RAPOPORT, et al., | |
| Defendants. | |

**I.     Introduction**

Plaintiff is a state prisoner proceeding pro se with this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on the Second Amended Complaint ("SAC") filed November 10, 2016. ECF No. 18. The court determined that plaintiff stated a cognizable claim under the Fourteenth Amendment due process clause against defendant Rapoport for causing plaintiff to be involuntarily medicated between September 24, 2012 and November 28, 2012, absent the conditions necessary for such treatment. The court also determined that service was appropriate for defendant Virga based on an alleged retaliatory prison transfer in violation of the First Amendment. ECF No. 18 at 5.

Before the court is defendants' motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. ECF No. 31. Plaintiff has filed an opposition, and defendants have filed a reply. ECF Nos. 37-39, 40. Having carefully considered

the record and the applicable law, the undersigned recommends that defendants' motion be denied in part and granted in part.

## II. Standards for a Motion to Dismiss

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the pleadings set forth in the complaint. Vega v. JPMorgan Chase Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009). Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and plain statement" of plaintiff's claims showing entitlement to relief. Fed. R. Civ. P. 8(a)(2); see also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In considering a motion to dismiss for failure to state a claim, the court accepts all of the facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff. Corrie v. Caterpillar, Inc., 503 F.3d 974, 977 (9th Cir. 2007). The court is "not, however, required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and [the court does] not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." Paulsen, 559 F.3d at 1071. The court must construe a pro se pleading liberally to determine if it states a claim and, prior to dismissal, tell a plaintiff of deficiencies in her complaint and give plaintiff an opportunity to cure them if it appears at all possible that the plaintiff can correct the defect. See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); accord Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed, particularly where civil rights claims are involved"); see also Hebbe v. Pliler, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (stating that courts continue to construe pro se filings liberally even when evaluating them under the standard announced in Iqbal).

### III.  Discussion

**A. The Second Amended Complaint**

In the SAC, plaintiff alleges that he was involuntarily medicated by defendant Rapoport, a staff psychiatrist at California State Prison-Sacramento, starting on September 24, 2012 and lasting for a period of 65 days, all because he declined to speak with her. ECF No. 18 at 7-8, 15-16. Plaintiff suffered from serious side effects as a result of the medications even after he told defendant Rapoport that he was allergic to Haldol which was first administered to him. ECF No. 18 at 7-8, 16-18.

According to plaintiff, defendant Rapoport prepared an Emergency Involuntary Medication Order ("EIMO") based on a falsified allegation that plaintiff had threatened her. Id. at 8, 18. Plaintiff was issued a Rules Violation Report ("RVR") based on this false allegation. ECF No. 18 at 26. Plaintiff contested the RVR at a disciplinary hearing and also challenged the EIMO in proceedings before an administrative law judge. Id. at 28-29. The disciplinary allegation and EIMO were both dropped according to plaintiff. Id.

Plaintiff filed an administrative grievance based on this alleged misuse of medication as a form of punishment by defendant Rapoport. ECF No. 18 at 20. On October 11, 2012, plaintiff contacted defendant Tim Virga, Warden at CSP-Sacramento, and complained about the use of involuntary medication by defendant Rapoport.  Plaintiff also indicates that he sent a subsequent letter to defendant Virga on December 1, 2012 contesting Rapoport's letter to the warden indicating that she did not feel safe working at CSP-Sacramento where plaintiff was housed. Id. at 27, 30.

Plaintiff further alleges that defendant Virga transferred him to "the worst prison in C.D.C.R." in retaliation for prevailing at his disciplinary and involuntary medication hearings and for filing a grievance as well as a lawsuit. ECF No. 18 at 9, 30-31.  The prison transfer did not advance any legitimate correctional goal according to plaintiff, but was done to prevent him from further exercising his constitutional rights. Id. Defendant Virga's conduct "chilled the plaintiff's protected conduct for three years…." Id. at 36.

////

By way of relief, plaintiff requests declaratory relief as well as compensatory and punitive damages. ECF No. 18 at 37-38.

**B. Motion to Dismiss**

Defendants Rapoport and Virga filed a motion to dismiss asserting that plaintiff has failed to state either a Fourteenth Amendment due process violation based on the involuntary administration of an antipsychotic medication or a First Amendment retaliation claim. ECF No. 31-1 at 1.

With respect to the due process claim, defendant Rapoport points out that plaintiff acknowledged telling various prison officials that he was suicidal on September 24, 2012. ECF No. 31-1 at 4 (citing ECF No. 18 at ¶¶ 15, 17, 19). Additionally, he also "admitted that he responded volatilely to Defendant Rapaport when she approached his holding cell." ECF No. 31-1 at 4 (citing ECF No. 18 at ¶ 22). This information indicates that defendant Rapoport ordered plaintiff to be medicated in order to protect staff and other inmates rather than for a "nefarious purpose." Id. Furthermore, the second amended complaint fails to allege a procedural due process violation since plaintiff acknowledges that defendant Rapoport's decision was reviewed by an administrative law judge. Id. at 5.

Defendant Virga also seeks dismissal of the First Amendment retaliation claim. According to defendant Virga, plaintiff has failed to plead sufficient facts demonstrating that any adverse state action was taken or that plaintiff was engaged in conduct protected by the First Amendment. ECF No. 31-1 at 6. Specifically, defendant emphasizes that CSP-Sacramento and Pelican Bay State Prison are both "comparable Level Four institutions in terms of security level." Id. Therefore, plaintiff's transfer from one Level Four facility to a different Level Four facility does not constitute an adverse prison transfer. Id. (citing Cal. Code Regs. tit. 15, § 3043.6(a)(1) (2012)). Additionally, defendant Virga contends that the prison transfer was "for the benefit of both parties and to preserve institutional safety and security." ECF No. 31-1 at 7 (citing Bell v. Wolfish, 441 U.S. 520, 546-47 (1979)). Thus, plaintiff's transfer to Pelican Bay State Prison was for a legitimate correctional goal. Id.

/////

4

Finally, both defendants Rapoport and Virga contend that they are immune from suit in their official capacities and qualifiedly immune from suit in their individual capacities. Id. at 7-10.

**C. Legal Standards**

**1. Due Process**

Ordinarily, interests protected by the due process clause may arise from two sources—the due process clause itself and state law. Meachum v. Fano, 427 U.S. 215, 223–27 (1976). Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the due process clause itself, whether or not state law authorized the changes. Sandin v. Conner, 515 U.S. 472, 484, (1995) (citing Vitek v. Jones, 445 U.S. 480, 493 (1980) (transfer to mental hospital), and Washington v. Harper, 494 U.S. 210, 221–22 (1990) (involuntary administration of psychotropic drugs)). A prisoner can show a Fourteenth Amendment liberty interest only if he alleges a change in confinement that imposes an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." Id. (citations omitted). Here, plaintiff alleges a liberty interest in being free from forcible drugging by prison officials. Both California law and the due process clause itself confer upon an inmate a right to be free from the arbitrary administration of anti-psychotic medication. See Keyhea v. Rushen, 178 Cal. App. 3d 526 (1986); Washington, 494 U.S. at 221–22. As such, plaintiff has met the threshold requirement under Sandin. See 515 U.S. at 484.

If a liberty interest is implicated, the prisoner must receive minimum due process prior to deprivation of that interest. See Wilkinson v. Austin, 545 U.S. 209, 229 (2005). In the context of involuntary medication, "given the requirements of the prison environment, the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." Washington , 494 U.S. 210, 227 (1990) (holding that prisoners possess "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment."). The decision whether to medicate an inmate against his will satisfies due process when facilitated by an

5

administrative review by medical personnel not directly involved in the inmate's instant treatment. Id. at 233. Procedural due process is satisfied if the inmate is provided with notice, the right to be present at an adversarial hearing, and the right to be present and cross-examine witnesses. Id. at 235. Appointment of counsel is not required; the provision of a lay advisor who understands the psychiatric issues involved is sufficient protection. Id. at 236.

### 2. First Amendment

"A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). Prisoners' First Amendment rights include the right to free speech and to petition the government. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003); Bradley v. Hall, 64 F.3d 1276, 1278-79 (9th Cir. 1995); see also Sandin v. Conner, 515 U.S. 472, 487 n. 11 (1995). Nevertheless, "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large." Shaw v. Murphy, 532 U.S. 223, 229 (2001).

The Constitution protects prisoners from deliberate retaliation by government officials for the exercise of their First Amendment rights. See Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005); Vignolo v. Miller, 120 F.3d 1075, 1077-78 (9th Cir. 1997). Because retaliation by prison officials may chill an inmate's exercise of legitimate First Amendment rights, retaliatory conduct is actionable regardless of whether it otherwise constitutes misconduct. Rhodes, 408 F.3d at 567 (citing Pratt v. Rowland, 65 F.3d 802, 806 & n. 4 (9th Cir. 1995)); see Thomas v. Evans, 880 F.2d 1235, 1242 (11th Cir. 1989) ("The penalty need not rise to the level of a separate constitutional violation."). Even so, there must be a causal connection between the allegedly retaliatory conduct and the action that provoked the retaliation; a plaintiff must "show that the protected conduct was a 'substantial' or 'motivating' factor in the defendant's decision [to act]." Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

To withstand a motion to dismiss, a plaintiff suing prison officials pursuant to § 1983 for retaliation must allege facts that show the following: (1) "[A] state actor took some adverse action

6

against [the] inmate (2) because of (3) that prisoner's protected conduct, and ... such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes, 408 F.3d at 567-68 (citing Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000); Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994)) (footnote omitted).

### D. Analysis

#### 1. Due Process

Plaintiff has sufficiently alleged that he was not a danger to himself or others and that the specific treatment that was initiated by defendant Rapoport was not in his medical interest because he was allergic to it. See Washington, 494 U.S. at 227 (1990). While defendant argues that plaintiff told various prison officials that he was suicidal, the second amended complaint explains that plaintiff told prison officials that this was a pretext in order to get transferred out of the unit in which defendant Rapoport worked. At the pleading stage, these allegations against defendant Rapoport are sufficient to give rise to a claim for relief under section 1983. Accordingly, the undersigned recommends denying the motion to dismiss against defendant Rapoport with respect to the Fourteenth Amendment substantive due process claim.

To the extent that defendant Rapoport contends that plaintiff has not sufficiently alleged a procedural due process violation, the undersigned agrees. The United States Supreme Court has cogently explained the difference between a substantive and a procedural due process claim in this particular context. "[T]he substantive issue is what factual circumstances must exist before the State may administer antipsychotic drugs to the prisoner against his will; the procedural issue is whether the State's nonjudicial mechanisms used to determine the facts in a particular case are sufficient." Washington, 494 U.S. at 220. Here, the second amended complaint only challenges the factual circumstances leading to the forcible administration of antipsychotic medication. It therefore facially alleges a substantive due process claim. Plaintiff does not assert that the nonjudicial procedures utilized by the state were insufficient to protect his substantive rights. Therefore, the undersigned recommends granting defendant's motion to dismiss the procedural due process claim since no such claim was alleged in the second amended complaint.

7

**2. First Amendment**

In this case, accepting the facts alleged in the complaint as true, plaintiff has stated a plausible First Amendment retaliation claim against defendant Virga. Plaintiff does not need to establish an independent constitutional right to assignment at a given prison in order to succeed on a First Amendment retaliation claim as defendant Virga argues. See Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). The Ninth Circuit has never required "a loss of credit-earning status or a change in classification…" in order to establish an adverse action for a First Amendment retaliation claim. See Pratt, 65 F.3d at 806 (concluding that First Amendment retaliation cases "remain good law" even after the Supreme Court's decision in Sandin v. Conner, 515 U.S. 472 (1995)). Defendant's failure to cite to any case law for this proposition demonstrates the fallacy of the argument. See ECF No. 31-1 at 6.

In addition, the undersigned finds that plaintiff has sufficiently alleged that his prison transfer was because of protected conduct. While plaintiff does not provide the specific dates of his disciplinary or EIMO hearings or even the date of the prison transfer itself, the general sequence of events is apparent from the allegations in the complaint. The last date on which plaintiff alleges that he was forcibly medicated was November 28, 2012. ECF No. 18 at 7-8, 15-16. Therefore, the hearings at which plaintiff successfully challenged defendant Rapoport's conduct occurred prior to this date as well as prior to defendant Virga's decision to transfer plaintiff to a different prison. Plaintiff specifically complained to defendant Virga in letters dated October 11, 2012 and December 1, 2012. ECF No. 18 at 27, 30. These factual allegations are sufficient to establish a plausible connection between defendant Virga's decision to transfer plaintiff because of plaintiff's successful administrative challenges to defendant Rapoport's conduct.

Defendant Virga's only remaining argument is that the prison transfer advanced a legitimate correctional goal of "preserv[ing] institutional safety and security" by separating plaintiff from defendant Rapoport. ECF No. 31-1 at 7. However, this argument overlooks the factual allegations in the complaint that detail plaintiff's numerous attempts to get transferred to a different unit within the same prison in order to avoid having defendant Rapoport as his treating

8

psychiatrist.  Therefore, plaintiff has facially alleged that the prison transfer "did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals."  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985) (citing Franklin v. Murphy, 745 F.2d 1221, 1230 (9th Cir. 1984)).  Taken as true, these allegations are sufficient to allege a First Amendment retaliation claim against defendant Virga.

### E.  Official Capacity Claims

Plaintiff has sued each defendant in his or her official capacity.  "[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity."  Kentucky v. Graham, 473 U.S. 159, 166 (1985).  Unless waived, the Eleventh Amendment bars a federal court award of damages under § 1983 against a state, state agency, or state official sued in an official capacity. Quern v. Jordan, 440 U.S. 332, 342 (1979).  Moreover, neither a state nor a state official sued in an official capacity for monetary damages is a "person" for purposes of a § 1983 damages action. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).  Therefore, even if a state waives its Eleventh Amendment immunity in federal court, Will precludes a damages action against the state government entity or a state official sued in an official capacity for monetary damages.  Id. For these reasons, plaintiff's claims for damages against defendants in their official capacity should be dismissed.

### F.  Qualified Immunity

Finally, defendants argue that they are entitled to qualified immunity because, based on the circumstances under which plaintiff was forcibly medicated, it would not have been clear to a reasonable government official that plaintiff's rights were being violated.  Qualified immunity shields government officials "from liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations omitted).   Defendants bear the burden of establishing qualified immunity.  Crawford–El v. Britton, 523 U.S. 574, 586–87 (1998). Generally, the qualified immunity doctrine must "give[ ] ample room for mistaken judgments by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  Hunter v. Bryant, 502 U.S. 224, 229 (1991).  Even if no constitutional violation occurred, the officer should

1 prevail if the plaintiff's right "was not 'clearly established' or the officer could have reasonably
2 believed that his particular conduct was lawful." Romero v. Kitsap County, 931 F.2d 624, 627
3 (9th Cir. 1991).

4 To analyze a qualified immunity claim, a court must first determine whether, taken in the
5 light most favorable to the party asserting the injury, the facts alleged show that the defendants
6 violated the claimant's constitutional rights. Saucier v. Katz, 533 U.S. 194, 201 (2001). If the
7 court determines the facts alleged could show violation of a constitutional right, the second step
8 requires determining "whether the right was clearly established." Id. at 201. The relevant inquiry
9 focuses on "what the officer reasonably understood his powers and responsibilities to be, when he
10 acted, under clearly established standards." Id. at 208. The plaintiff bears the burden of proving
11 that the right allegedly violated was clearly established at the time of the violation. See Sorrels v.
12 McKee, 290 F.3d 965, 969 (9th Cir. 2002).

13 Here, plaintiff has presented a cognizable Fourteenth Amendment substantive due process
14 claim. During the time period of defendant Rapoport's alleged acts, an inmate's right to be free
15 from the arbitrary administration of anti-psychotic medication was clearly established by existing
16 case law. See Washington v. Harper, 494 U.S. 210, 221–22 (1990). The question, therefore, is
17 whether defendant Rapoport reasonably could have believed that her conduct was lawful.
18 Defendant argues that she was following state procedures when medicating plaintiff against his
19 will, and therefore she is entitled to qualified immunity. The undersigned finds that the key
20 question is more properly resolved on a motion for summary judgment or at trial, when defendant
21 may present evidence in support of their claim, and the court may properly consider such
22 evidence. Defendant Rapoport's mere assertion of good faith is insufficient to support a complete
23 defense at this stage in the litigation.

24 Defendant Virga also asserts the defense of qualified immunity and argues that his action
25 in transferring plaintiff to a different prison was reasonable. However, the gravamen of plaintiff's
26 second amended complaint is that it was possible to transfer plaintiff to a different unit *of the*
27 *same prison* in order to avoid being treated by defendant Rapoport. Defendant Virga does not
28 address this allegation in the motion to dismiss. Thus, construing the allegations in the light most

favorable to plaintiff at this juncture, the undersigned finds insufficient facts to support defendant Virga's assertion of qualified immunity.

Thus, for the purposes of the instant motion, the undersigned cannot resolve the issue of whether defendants are entitled to qualified immunity. Therefore, the undersigned recommends that the motion to dismiss be denied without prejudice to defendants' claim that they are entitled to qualified immunity.

### IV. Plain Language Summary for Pro Se Party

Since you are acting as your own attorney in this case, the court wants to make sure that the words of this order are understood. The following information is meant to explain this order in plain English and is not intended as legal advice.

The court has reviewed your second amended complaint and concluded that it has sufficiently stated a substantive due process violation by defendant Rapoport for causing you to be involuntarily medicated between September 24, 2012 and November 28, 2012. However, there are not sufficient allegations in your complaint of a separate procedural due process violation. Additionally, federal law does not allow your claim for monetary damages against the defendants in their official capacity to proceed. This does not prevent monetary damages from being awarded against defendants in their individual capacities. Lastly, the court is recommending that defendants' claim of qualified immunity be denied at this early stage of the proceedings. It may be raised later if defendants so choose.

You have fourteen days to explain to the court why this is not the correct outcome in your case. If you choose to do this you should label your explanation as "Objections to Magistrate Judge's Findings and Recommendations." The district court judge assigned to your case will review any objections that are filed and will make a final decision on the motion to dismiss.

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss, ECF No. 31, be denied against defendant Rapoport with respect to the Fourteenth Amendment substantive due process claim and against defendant Virga with respect to the First Amendment retaliation claim.

2. The procedural due process claim against defendant Rapoport be dismissed.

11

3. All claims for monetary damages against the defendants in their official capacities be dismissed.

4. Defendants' claim of qualified immunity be denied without prejudice to renewal at a later stage of the proceedings.

5. Plaintiff's motion to process the case, ECF No. 42, be denied as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 2, 2018

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

Owen0273.mtd.docx